UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff/Respondent,

vs.                                                      Case No. 13-20066

JACK CHARLES FUQUA,                      HON. AVERN COHN

    Defendant/Petitioner.
_____/

## MEMORANDUM AND ORDER DENYING MOTION UNDER 28 U.S.C. § 2255
## (Doc. 71)
## AND DECLINING TO ISSUE A CERTIFICATE OF APPEALALBILITY

I. Introduction

This is a criminal case. Defendant/Petitioner Jack Charles Fuqua (Fuqua). Fuqua plead guilty under a Rule 11 agreement to one count of possessing firearms in connection with a drug trafficking offense, in violation of 18 U.S.C. §924(c) and maintaining a drug premises, in violation of 21 U.S.C. § 856(a). The Court sentenced him to 135 months' imprisonment in accordance with the plea agreement.

Before the Court is Fuqua's pro se motion under 28 U.S.C. § 2255. (Doc. 71).[1] The government has filed a response (Doc. 80). For the reasons that follow, the motion will be denied because it is barred by a statute of limitations.

II. Background

A. Factual Background

---

[1] Also before the Court is Fuqua's motion for discovery in which he request a copy of the sentencing transcript. (Doc. 70). Because the government has provided Fuqua with a copy of the sentencing transcript, see Doc. 79 this motion is MOOT.

On December 30, 2012, Detroit police officers obtained a warrant to search a residence on Hull street, based on suspected narcotics activity. The affidavit noted three separate "open and current complaints filed with Detroit police referring to the sale of illegal narcotics by a B/M around 60s and two narcotics complaints stating subjects name to be Jack." It also stated that the affiant had conducted surveillance outside the house that day and observed five unknown individuals within a 50 minute period walk up to house. Officers executed the search warrant on December 31, 2013. Despite the fact that there were eight individuals in the house, no one answered the door when the police knocked. Officers forced entry. Once inside, officers recovered drugs, drug paraphernalia, several firearms. and ammunition Officers arrested Fuqua. The remaining individuals, consisting of six women and one man, ranging in age from 23 to 44, were not arrested.

A magistrate judge ordered Fuqua detained. Subsequently, on February 12, 2013, the Court released him on bond. The terms of Fuqua's bond included home confinement, location monitoring, and that "no unrelated females shall visit or reside" at the Hull Street residence.

After Fuqua was released to his home on Hull Street, the case agent received information that Fuqua was selling illegal narcotics from his residence while under federal indictment and on pretrial release.

On June 28, 2013, ATF agents conducted surveillance in the area of Hull Street, Detroit, Michigan. They observed a dark colored Chrysler 300 parked in the driveway. After a short time, three (3) unknown white females, approximately 25 years old and younger, were observed exiting the residence and departing in the Chrysler 300. After

a short time, the vehicle returned, and the driver went back inside the house

Again on July 1, 2013, ATF conducted surveillance, and observed a blue minivan, driven by a white male, approximately 50 years old, park in the drive way. A short time later, an unknown white female, approximately 25 years old, exited the passenger seat of the minivan and walked up to the residence. This unknown white female knocked on the front door and went inside the house. A short time later, a burgundy Chrysler PT Cruiser parked in front of the Hull Street residence. An unknown white female, approximately 30-35 years old, exit the vehicle, walked up to the residence, and after knocking, proceed to go inside the house. After a short time, the second unknown white female exited the residence and departed the area in the PT Cruiser. Approximately ten minutes later, the first unknown white female exited the residence and departed the area in the blue Minivan.

Two days later, ATF conducted additional surveillance. They observed a red Buick sedan park in front of the Hull Street residence. The driver, an unknown white female, wearing a bright pink shirt and black pants, was observed to exit the vehicle, walk up to the residence and after knocking, gain access to the residence. After a short time, this woman exited the residence and returned to the Buick sedan. Detroit Police conducted a traffic stop of the Buick. The female told Detroit Police that she had gone to the Hull Street residence to purchase heroin. The woman further stated that she was told by "Pops" that there was no heroin at that time, but he had crack. She described "Pops" as a 60 year old black male who was on "federal parole" and not allowed to leave the house.

Law enforcement secured and executed a search warrant for the Hull residence

that day. No one answered the door when law enforcement knocked. The front door was forced open. Law enforcement found Fuqua in the basement of the residence and a 24 year old female, in the rear of the location. Several narcotics, weapons, ammunition, and cash were seized. The female that was in the house stated verbally and in writing that she has known Fuqua for about six years, and has been buying narcotics from him as long as she knew him.

### B. Procedural History

Fuqua was initially charged in two separate federal cases. The parties negotiated a Rule 11 agreement, combining the cases for a global resolution. Initially, the parties agreed that Fuqua would plead to Counts 2 and 4 of the first indictment, which charged felon in possession of firearms, in violation of 18 U.S.C. § 922(g)(1), and possessing firearms in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c), and Counts 1 and 2 of the second indictment, which both charged possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1). The parties agreed to a 117 month sentence.

In the Rule 11 agreement Fuqua represented to the government and this Court, that his criminal history included three prior felony convictions. However, the probation department later discovered that Fuqua had been convicted of assault with intent to rob while armed in 1972. This meant that Fuqua had three "violent felony" convictions for the purposes of the Armed Career Criminal Act, 18 U.S.C. §924(e). If Fuqua continued under the original Rule 11 agreement, the Court would have been statutorily bound to sentence him to at least 240 months—180 months on the 922(g) count, and consecutive 60 months on the 924(c) count—instead of the anticipated 117 months.

The parties re-negotiated. Another Rule 11 agreement was offered and accepted by Fuqua. Under the terms of the new Rule 11 agreement, Fuqua would plead to Count 2 of the first indictment (possessing firearms in furtherance of drug trafficking, 18 U.S.C. § 924(c)), and Count 3 of the second indictment (maintaining a drug premises, 21 U.S.C. § 856(a)). The agreed-upon sentence was 135 months, to account for Fuqua's additional criminal history.

The Court sentenced Fuqua on October 2, 2014. A judgment was entered on October 7, 2014. (Doc. 62). Fuqua did not appeal. On July 9, 2015, he filed a motion for reduction of sentence under 18 U.S.C. §3582. The Court denied the motion. (Doc. 65). On May 6, 2016, Fuqua filed his first "emergency motion" to appoint a mitigation specialist on May 6, 2016. (Doc. 64). The Court denied the motion a month later. (Doc. 66). On September 20, 2016, Fuqua filed another "emergency motion" for a mitigation specialist. (Doc. 67). On October 27, 2016, the Court again denied the motion. (Doc. 68).

On August 22, 2017, Fuqua filed the instant motion under § 2255.

### III. Discussion

The government says the motion should be denied as untimely. The Court agrees. Motions to vacate sentences are required to be filed within one year from the latest of:

> (1)The date on which the judgment of conviction becomes final;
> (2)The date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such a government action;
> (3)The date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made

5

> retroactively applicable to cases on collateral review; or
> (4)The date on which the facts supporting the claim or claims presented could have not been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Here, because Fuqua never filed an appeal, his conviction became final on October 14, 2014, or 14 days after the entry of his judgment. Sanchez-Castellano v. United States, 358 F.3d 424, 428 (6th Cir. 2004). Fuqua did not file his § 2255 petition until August 22, 2017, or two years and ten months after his conviction became final, his claim is barred by the one year statute of limitations.

Fuqua, however, says that the motion should be equitably tolled. The Supreme Court has confirmed that the one-year statute of limitations is not a jurisdictional bar and is subject to equitable tolling. Holland v. Florida, 560 U.S. 631, 645 (2010). The Supreme Court has explained that a habeas petitioner is entitled to equitable tolling "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Id. at 649 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)); see also Robertson v. Simpson, 624 F.3d 781, 783-84 (6th Cir. 2010). A petitioner has the burden of demonstrating that he is entitled to equitable tolling. Allen v. Yukins, 366 F.3d 396, 401 (6th Cir. 2004). "Typically, equitable tolling applied only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." Jurado v. Burt, 337 F.3d 638, 642 (6th Cir. 2003) (quoting Graham-Humphreys v. Memphis Brooks Museum of Art, Inc., 209 F.3d 552, 560 (6th Cir. 2000)).

Fuqua makes no such showing. First, the fact that he is untrained in the law, is (or was) proceeding without a lawyer or other legal assistance, or may have been unaware of the statute of limitations for a period of time does not warrant tolling. See Keeling v. Warden, Lebanon Corr. Inst., 673 F.3d 452, 464 (6th Cir. 2012). Fuqua does not challenge the fact that he knew he needed to file his petition within a year after sentencing. He simply claims that he "met a guy" that promised him a reduced sentence in exchange for $250.00. Fuqua's experience with the criminal justice system – and with his federal cases – demonstrates that he knows how to make filings, and is familiar with criminal procedure. His first "emergency motion" was not even filed until 18 months after his judgment entered on his case. Fuqua is not entitled to equitable tolling under the circumstances.

However, both the Supreme Court and the Court of Appeals for the Sixth Circuit have held that a credible claim of actual innocence may equitably toll the one-year statute of limitations. McQuiggin v. Perkins, _ U.S. _, 133 S. Ct. 1924, 1928 (2013); Souter v. Jones, 395 F.3d 577, 588-90 (6th Cir. 2005). As explained in Souter, to support a claim of actual innocence, a petitioner in a collateral proceeding "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Bousley v. United States, 523 U.S. 614, 623 (1998) (quoting Schlup v. Delo, 513 U.S. 298, 327-28 (1995)); see also House v. Bell, 547 U.S. 518, 537-39 (2006). A valid claim of actual innocence requires a petitioner "to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness account, or critical physical evidence – that was not presented at trial." Schlup, 513 U.S. at 324. Furthermore,

7

actual innocence means "factual innocence, not mere legal insufficiency." Bousley, 523 U.S. at 623. In keeping with Supreme Court authority, the Sixth Circuit has recognized that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" Souter, 395 F.3d at 590 (quoting Schlup, 513 U.S. at 321).

Fuqua has not met the high burden of showing actual innocence. As fully explained in the government's response and as detailed above, the record is sufficient to establish that Fuqua is guilty of the crimes to which he plead guilty. He cannot show that he was factually innocent of possessing a firearm in furtherance of drug trafficking activity of maintaining a drug premises.

Moreover, Fuqua's assertions that his plea and sentence are invalid do not establish his actual innocence. Fuqua says that his pleas were invalid because: (1) he was unaware that an element of the 18 U.S.C. §924(c) count required proof of a drug trafficking crime; and (2) he never read the second plea agreement, or had an opportunity to object to the presentence report. Fuqua's claims are belied by the record.

As to his first argument, the title of Count Two of the indictment is: "possession of firearms in furtherance of a drug trafficking crime." At the plea hearing, the Court asked Fuqua if he had read the indictment, which includes the language regarding a drug trafficking crime. Fuqua said, "yes, sir." The elements also appear in the Rule 11 plea agreement, which Fuqua signed as having read the entire document. Fuqua does not contend that if he had known this fact, he would not have pleaded guilty.

As to his second argument – that the plea was involuntary because no one read

8

him the plea agreement or allowed for him to object to the PSR – is belief by the record. Fuqua's signed the Rule 11, acknowledging that he read (or had been read) the entire Rule 11 plea agreement. Fuqua also acknowledged the terms of the revised Rule 11 at sentencing. During the sentencing hearing, defense counsel raised an objection to the PSR, which the Court sustained. In reaction, Fuqua said, "Thank you, your honor." The Court also deleted a condition of supervised release recommendation and Fuqua again thanked this Court. And when this Court asked, "is there any disagreement [to the PSR]?", Fuqua said, "No, sir." From the context of the colloquy, it is apparent that Fuqua had an opportunity to review the PSR with his counsel. Otherwise, there would have been no basis for counsel to raise objections to the report. And when the Court made rulings in reference to the PSR report, Fuqua thanked the Court. At no time did Fuqua indicate he was unaware of what was happening.

Overall, the petition is untimely and Petitioner has not established that he is entitled to equitable tolling of the one-year period or that he is actually innocent so as to excuse the untimeliness.[2]

V. Conclusion

For the reasons stated above, the motion is DENIED as barred by the statute of limitations. Further, jurists of reason would not find the Court's procedural ruling debatable. Accordingly, the Court DENIES a certificate of appealability under 28 U.S.C.

---

[2]In light of this finding, it is not necessary to address the government's argument that Fuqua's claims are procedurally defaulted.

§ 2253(c)(1)(a).³  See Slack v. McDaniel, 529 U.S. 473, 484-85 (2000).

    SO ORDERED.

                                              <u>S/Avern Cohn</u>
                                              AVERN COHN
                                              UNITED STATES DISTRICT JUDGE

Dated: 10/31/2018
      Detroit, Michigan

---

³"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.