UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                Case Numbers 13-20066
v.                                                          13-20516
                                                         Honorable David M. Lawson

JACK CHARLES FUQUA,

                Defendant.
_____/

**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE**

      Defendant Jack Fuqua has filed motions in these cases asking the Court to reduce his prison sentence to time served under the compassionate release provision of 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239.  The cases were consolidated earlier in the proceedings.  Fuqua argues that his release is justified by extraordinary and compelling circumstances, consisting of his age (70) and his medical conditions, including Hepatitis C, obesity (BMI 32), hypertension, and chronic kidney disease ("stage II mild"), all of which, he contends, increase his risk from possible infection with the COVID-19 disease.  This motion is notable in that the defendant's medical records indicate that he previously was diagnosed by laboratory tests as having an asymptomatic infection of the coronavirus and was placed in isolation.  He later fully recovered, evidently with no adverse effects.  Because Fuqua has not shown that "extraordinary and compelling reasons warrant such a reduction," as section 3582(c)(1)(A)(i) requires, his motion to reduce his sentence will be denied.

I.

      These related criminal cases were consolidated for adjudication by the Honorable Avern Cohn.  Fuqua pleaded guilty in both matters on one charge of maintaining a drug involved premises, contrary to 21 U.S.C. § 856(a)(1), (b) (in file number 13-20516), and one charge of

possessing a firearm in furtherance of drug trafficking, 18 U.S.C. § 924(c) (13-20066). On October 7, 2014, Judge Cohn sentenced him to consecutive prison terms of 75 months on the drug count and 60 months on the gun count, for a total of 135 months of incarceration. He has served approximately 85 months, and he presently is confined by the Bureau of Prisons at FCI Milan, in Milan, Michigan, a low security facility that houses around 1,320 inmates. Public records of the BOP indicate that the defendant is scheduled to be released from prison on December 23, 2022. Fuqua is 70 years old.

On June 24, 2020, Fuqua filed *pro se* motions in both matters seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018. The arguments presented by the parties are identical respecting both cases, which are referred to hereafter in the singular. In his motion, Fuqua argued that he is qualified for release because of his age, obesity, hypertension, and his diagnoses with Hepatitis C and kidney disease. The Court appointed counsel, and an amended motion was filed through counsel on August 24, 2020. The government has filed a response opposing the motion on the merits.

The most recent data disclosed by the BOP indicates that there are no active coronavirus cases among inmates and one among staff at the Milan facility, and 89 inmates and 55 staff who previously were diagnosed with the disease but now have recovered. Reports indicate that three inmates have died. *See* https://www.bop.gov/coronavirus/.

II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.* "The request may come through a motion in federal court filed by the Director of

the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). Fuqua relies on subparagraph (i) of the statute. Under that provision, the Court can order a reduction of a sentence, even to time served, *first*, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," *second*, if "extraordinary and compelling reasons warrant such a reduction," and *third*, if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission's policy statement is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (en banc) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it").

Addressing the second requirement, Fuqua argues that compassionate release is warranted based on his age and various medical conditions. He included medical records indicating his diagnosis with an asymptomatic case of COVID-19, for which he was placed in isolation and from

- 3 -

which he has since recovered.  Nevertheless, he argues that the prison environment and his other underlying chronic medical conditions still combine to pose real risks to his health.

The government concedes that the request for release has been administratively exhausted.  However, it argues that release is not favored because, despite his medical risk factors, which the government acknowledges, any concerns for the defendant's health are mitigated by the fact that he already was diagnosed with an asymptomatic infection of the disease and recovered without complications.  The government also argues that, even if the defendant qualifies for release based on his medical risk, release should be denied based on his danger to the community.

The defendant's generalized concerns about the health risks from his incarceration are justifiable.  "The COVID-19 virus is highly infectious and can be transmitted easily from person to person.  COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise.  If contracted, COVID-19 can cause severe complications and death.  Because there is no current vaccine, the Centers for Disease Control and Prevention ("CDC") recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020).  "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation.  It presents a clear and present danger to free society for reasons that need no elaboration." *United States of America v. Ortiz*, No. 16-439, 2020 WL 3640582, at *2 (S.D.N.Y. July 6, 2020).

Moreover, "the crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread.  And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself.  For these reasons, in the past months, numerous [federal] courts . . . have ordered the temporary release of inmates held

in pretrial or presentencing custody and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences." *Ortiz*, 2020 WL 3640582, at *2 (collecting cases; footnotes omitted).

The defendant has not advanced sufficiently compelling circumstances to warrant a sentence reduction based on his medical risk factors, even though two of his pertinent health circumstances (age and kidney disease) are recognized risk factors for complications from a coronavirus infection. The fact that the defendant previously contracted the virus, was asymptomatic, and since has recovered without serious consequences mitigates against a finding that in his present situation he is subjected to any extraordinary risk of complications from a possible future infection. Fuqua's showing on the second element that he must establish to justify compassionate release — extraordinary and compelling reasons — is insufficient, so it is unnecessary to discuss the other elements. His health concerns are understandable, but insufficient to warrant immediate release.

It is widely recognized and publicly acknowledged that persons with certain medical conditions face an increased risk of severe consequences from potential COVID-19 infection. *United States v. Lassister*, No. 17-232, 2020 WL 3639988, at *4 (D. Md. July 6, 2020) ("The risk factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.") (citing Coronavirus Disease 2019 (COVID-19), People Who Are At Risk for Severe Illness, Centers for Disease Control & Prevention (June 25, 2020), https://bit.ly/2WBcB16). The defendant's age alone (70) is a recognized serious risk factor.

The defendant also correctly points out that other pertinent recognized risk factors include obesity. However, medical notes from May 1, 2020 recorded the defendant's height at 5' 8" and

his weight at 194 pounds.  Medical Report dated May 1, 2020, ECF No. 93, PageID.584.  Those figures put his BMI at 29.4, *see* WebMD: BMI Calculator, https://www.webmd.com/diet/body-bmi-calculator, which is below the obesity threshold of 30.0 that is recognized by the CDC as a serious risk factor.

Fuqua's diagnosis with stage II mild kidney disease also qualifies as a recognized serious risk factor.  *See* CDC Risk factors, *supra* ("Having chronic kidney disease of any stage increases your risk for severe illness from COVID-19.").

The defendant's medical records indicate a diagnosis with "benign essential hypertension," *see* Medical Report dated May 1, 2020, ECF No. 93, PageID.586, which is not a recognized serious risk factor under the most current CDC guidance.  *See United States v. Myers*, No. 18-20633, 2020 WL 4934343, at *2 (E.D. Mich. Aug. 24, 2020) ("Although the CDC recognizes pulmonary hypertension as a risk factor, the record does not support Myers's assertion that he suffers from hypertension, let alone the pulmonary variety.").  Moreover, the medical notes indicate that the defendant's hypertension is "stable," and that he presently is prescribed three medications for the condition, which appear to have it well under control, since his blood pressure reading from May 1, 2020 was only slightly above normal (123/85).  *Id.* at PageID.583-86.

The defendant's medical records also indicate a diagnosis of Hepatitis C, but that underlying chronic disease is not recognized by the CDC guidance as a serious risk factor for coronavirus infection.

Altogether, Fuqua has shown that he has two recognized significant risk factors, which are his age and kidney disease.  His other medical conditions do not comprise recognized serious medical risks.

The government's position that the defendant's risk is mitigated by prospective immunity from his past infection is at best questionable, and the most recent guidance from the CDC indicates that the scientific evidence presently available does not support a conclusion that persons infected with COVID-19 are immune from further disease after recovery. *See* CDC: Updated Isolation Guidance, https://www.cdc.gov/media/releases/2020/s0814-updated-isolation-guidance.html ("Contrary to media reporting today, this science does not imply a person is immune to reinfection with SARS-CoV-2, the virus that causes COVID-19, in the 3 months following infection. The latest data simply suggests that retesting someone in the 3 months following initial infection is not necessary unless that person is exhibiting the symptoms of COVID-19 and the symptoms cannot be associated with another illness."); CDC: Clinical Questions about COVID-19, https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html ("There is no firm evidence that the antibodies that develop in response to SARS-CoV-2 infection are protective. If these antibodies are protective, it's not known what antibody levels are needed to protect against reinfection."). Instead, the most recently available guidance advises only that the science demonstrates that the period of infectiousness ends within 10 days after the onset of symptoms or within 20 days for those who become severely ill, and, thus, the fact that a person has tested positive for the virus does not warrant repeated testing or continued isolation after those presumptive infectious periods have expired.

Another pertinent consideration is the probability that the defendant may be exposed to the coronavirus in his present situation, which in this case appears presently to be quite low. Recent reports indicate that the probability of infection at Milan, although previously quite high, now has declined significantly, with the prison now having no active cases among inmates and only one among staff. To be sure, the government's position that the defendant is at little or no risk is less

reassuring considering the BOP's admitted failure to implement any comprehensive prophylactic testing program, which calls into doubt the figures that it has reported. *Wilson*, 961 F.3d at 849 ("The flaws inherent in the half-measures employed by the BOP are amplified by the BOP's inability to test inmates for COVID-19. At the time of the preliminary injunction, the BOP had only obtained 75 tests for roughly 2,500 inmates at Elkton. The fact that more than two-thirds of those tests came back positive suggests an extremely high infection rate, but the BOP's testing shortage ensured that the record would not reflect the precise figure.") (Cole, Chief J., concurring); *see also United States v. Campbell*, No. 03-4020, 2020 WL 3491569, at *9 (N.D. Iowa June 26, 2020) ("As of June 23, 2020, no cases of COVID-19 at Yankton FPC had been reported. However, without knowing whether the BOP is actively testing inmates and staff members for COVID-19 at Yankton FPC, the lack of active confirmed cases does not mean COVID-19 is not present at the facility. Nor does it mean there will not be a future outbreak at the facility. As the Government acknowledges, despite extensive measures to prevent transmission, more federal inmates will inevitably contract COVID-19 going forward."). Nevertheless, the most recent reports suggest that the defendant's risk of infection now is as low as it would be in a home setting, considering that the measures taken by BOP appear to have succeeded in halting the spread of the disease, despite the recent acceleration of the pandemic among the public at large, including in Michigan, where recent daily case counts are trending among the highest levels observed to date. *See* Coronavirus Statistics: Michigan, https://www.worldometers.info/coronavirus/usa/michigan/.

Moreover, the defendant already previously was infected with a case of the disease and displayed no symptoms, let alone complications. He since has recovered fully. *See* Medical Reports dated June 19, 2020 through June 29, 2020, ECF No. 93, PageID.572-583. Whether or not the defendant may be presumed to have any prospective immunity to the disease, the fact that

he previously was infected and recovered without developing symptoms or suffering any lasting consequences mitigates against a finding that the risks of reinfection in his present state of health are so dire as to warrant immediate release from confinement. *See United States v. Shrout*, No. 15-00438, 2020 WL 3483703, at *4 (D. Or. June 26, 2020) ("The Court acknowledges that Shrout suffers from underlying conditions (cardiovascular diseases) that would make him more susceptible to contracting COVID-19, and that the virus would further complicate those conditions. In addition to his age, those are valid concerns, but Shrout has already contracted COVID-19 and, crucially, the BOP has properly managed the disease. . . . In fact, Shrout was mostly asymptomatic and appears to have recovered from his bout with COVID-19. The Court finds that Shrout has not carried his burden to prove his medical condition is an 'extraordinary and compelling' reason that warrants a sentence reduction in this case.").

Fuqua's showing on the second element discussed above — extraordinary and compelling reasons — is insufficient, so it is unnecessary to discuss the other two.

### III.

Fuqua has exhausted his administrative remedies, but he has not demonstrated that compassionate release under 18 U.S.C. 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's motions for compassionate release (13-20066, ECF No. 87, 104; 13-20516, ECF No. 53, 70) are **DENIED**.

                                              s/David M. Lawson
                                              DAVID M. LAWSON
Dated:   September 22, 2020             United States District Judge